**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Byron C. Ellis, ) | CIV 14-2417-PHX-MHB |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| Carolyn W. Colvin, Commissioner of the ) Social Security Administration, ) | |
| Defendant. ) | |

Pending before the Court is Plaintiff Byron C. Ellis's appeal from the Social Security Administration's final decision to deny his claim for disability insurance benefits and supplemental security income. After reviewing the administrative record and the arguments of the parties, the Court now issues the following ruling.

**I. PROCEDURAL HISTORY**

Plaintiff filed applications for disability insurance benefits and supplemental security income alleging disability beginning April 7, 2011. (Transcript of Administrative Record ("Tr.") at 30, 178-79.) His applications were denied initially and on reconsideration. (Tr. at 28, 80-117.) Thereafter, Plaintiff requested a hearing before an administrative law judge. (Tr. at 28, 133-34.) A hearing was held on February 21, 2013, (Tr. at 45-79), and the ALJ issued a decision finding that Plaintiff was not disabled (Tr. at 25-44). The Appeals Council denied Plaintiff's request for review (Tr. at 1-6), making the ALJ's decision the final decision of the Commissioner. Plaintiff then sought judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## II.  STANDARD OF REVIEW

The Court must affirm the ALJ's findings if the findings are supported by substantial evidence and are free from reversible legal error. See Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir. 1990).  Substantial evidence means "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971); see Reddick, 157 F.3d at 720.

In determining whether substantial evidence supports a decision, the Court considers the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion.  See Reddick, 157 F.3d at 720.  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); see Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989).  "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, the court may not substitute its judgment for that of the [Commissioner]."  Reddick, 157 F.3d at 720-21.

## III.  THE ALJ'S FINDINGS

In order to be eligible for disability or social security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  An ALJ determines a claimant's eligibility for benefits by following a five-step sequential evaluation:

(1) determine whether the applicant is engaged in "substantial gainful activity";

(2) determine whether the applicant has a medically severe impairment or combination of impairments;

(3) determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to preclude the applicant from engaging in substantial gainful activity;

(4)  if the applicant's impairment does not equal one of the listed impairments, determine whether the applicant is capable of performing his or her past relevant work;

(5)  if the applicant is not capable of performing his or her past relevant work, determine whether the applicant is able to perform other work in the national economy in view of his age, education, and work experience.

See Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987) (citing 20 C.F.R. §§ 404.1520, 416.920).  At the fifth stage, the burden of proof shifts to the Commissioner to show that the claimant can perform other substantial gainful work.  See Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993).

At step one, the ALJ determined that Plaintiff did not engage in substantial gainful activity since April 7, 2011 – the alleged onset date.  (Tr. at 30.)  At step two, he found that Plaintiff had the following severe impairments: lumbar stenosis status post laminectomy fusion L3-L5, history of alcohol dependence, and hypertension.  (Tr. at 31-33.)  At step three, the ALJ stated that Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 of the Commissioner's regulations.  (Tr. at 33.)  After consideration of the entire record, the ALJ found that Plaintiff retained "the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant is able to lift and carry 10-20 pounds occasionally in each hand individually, 20-30 pounds with both hands, sit for 30 min to one hour, stand 10 min, walk the equivalent distance of 2 blocks at one time, but may need a cane for ambulating or standing if no other supportive option."[1]  (Tr. at 34-37.)  The ALJ determined that Plaintiff was not capable of performing past relevant work, but that considering Plaintiff's age, education, work experience, and residual functional capacity "there are jobs that exist in significant numbers in the national economy that Plaintiff can perform."  (Tr. at 37-38.)  Therefore, the ALJ concluded that Plaintiff has not been under a disability from April 7, 2011, through the date of his decision.  (Tr. at 38-39.)

---

[1]  "Residual functional capacity" is defined as the most a claimant can do after considering the effects of physical and/or mental limitations that affect the ability to perform work-related tasks.

- 3 -

## IV. DISCUSSION

In his brief, Plaintiff contends that the ALJ erred by failing to make a proper finding at step five of the sequential evaluation process. Specifically, Plaintiff claims that ALJ erroneously relied on the VE testimony and failed to resolve conflicts between the DOT and the sit/stand option and the possible need for a cane set forth in the residual functional capacity assessment.

At step five, the Commissioner has the burden of demonstrating that the claimant can perform some work that exists in "significant numbers" in the national or regional economy, taking into account the claimant's residual functional capacity, age, education, and work experience. See Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999). "The Social Security Administration has taken administrative notice of the [DOT], which is published by the Department of Labor and gives detailed physical requirements for a variety of jobs." Massachi v. Astrue, 486 F.3d 1149, 1153 n.8. "In making disability determinations, the Social Security Administration relies primarily on the [DOT] for 'information about the requirements of work in the national economy.'" Id. at 1153 (quoting SSR 00-4p at *2). The ALJ may also use testimony from a vocational expert ("VE"). See id. Evidence by a VE should generally be consistent with the DOT, and while neither the DOT nor VE testimony trumps the other when there is a conflict, it is incumbent on the ALJ to identify if a conflict exists and then determine whether the VE's explanation for the conflict is reasonable and whether a basis exists for relying on the expert rather than the DOT. See id.

At the hearing, the ALJ posed a hypothetical question to the VE whether there were jobs in significant numbers in the economy for someone with Plaintiff's RFC, given his age, education, and work history. (Tr. at 75.) The ALJ stated, in pertinent part, "[t]he individual can sit at one time ... for thirty minutes to one hour, and the individual can stand at one time for ten minutes and walk at one time for two blocks. The claimant may need a cane for ambulating or standing ... if there's nothing to hold onto." (Tr. at 75.)

After the VE found that, based on these limitations, Plaintiff could not perform his past relevant work, the ALJ asked the VE whether there are jobs that exist in significant

1  numbers in the regional and national economies that Plaintiff could perform. (Tr. at 75-76.)
2  Before the VE answered, she asked the ALJ a clarifying question – "Could this person sit,
3  stand, or walk for an eight-hour day if they had a sit/stand option?" (Tr. at 76.) The ALJ
4  responded, "Yes." (Tr. at 76.) The VE then identified three representative occupations from
5  the DOT, which satisfied the hypothetical limitations: parking lot attendant, cashier, and
6  order caller. (Tr. at 76-77.)

7  In identifying the three representative occupations, the VE acknowledged that the
8  need for a sit/stand option erodes the number of jobs listed in the DOT. Specifically, she
9  stated, "I would say one-third of the cashiering jobs ... would exist with a sit/stand option
10 based on my experience. That would make the eroded numbers 4,000 in Arizona and
11 275,000 in the United States. ... And there are order caller jobs that could be done with a
12 sit/stand option, Your Honor ... 195 in Arizona, and 11,100 in the United States." (Tr. at 76.)

13 After considering the record before the Court, the Court finds no error. The record
14 demonstrates that the ALJ posed proper hypothetical questions to the VE setting out all of
15 Plaintiff's particular limitations and restrictions. Then, considering Plaintiff's limitations,
16 the VE found three representative occupations from the DOT –  specifically noting that
17 "based on [her] experience," the sit/stand option "eroded" the numbers in Arizona and the
18 United States.

19 Thus, the ALJ did not need to inquire about an apparent conflict because no conflict
20 between the VE and the DOT existed. And, even if an apparent conflict can be construed
21 from the VE's testimony and the DOT's silence or failure to address a sit/stand option or the
22 possible need for a cane, the VE's response – voluntarily reconciling any apparent conflict
23 based on her experience – would qualify as a reasonable explanation according to SSR 00-4p
24 (stating that one reasonable explanation for a conflict could be testimony from a VE based
25 on his personal experience).[2]

26

27  [2] The Court also notes that – as to the sit/stand option – SSR 83-12 explicitly states
28 that, in cases where a claimant has a residual functional capacity that is "compatible with the
performance of either sedentary or light work except that the person must alternate periods

- 5 -

1   Plaintiff cites Massachi v. Astrue, 486 F.3d 1149, 1152 (9th Cir.2007), as support for
2  his claim. The Court is not persuaded. In Massachi, the Ninth Circuit held that an ALJ may
3  not "rely on a vocational expert's testimony regarding the requirements of a particular job
4  without first inquiring whether the testimony conflicts with the [DOT]." Id. "The ALJ must
5  first determine whether a conflict exists. If it does, the ALJ must then determine whether the
6  vocational expert's explanation for the conflict is reasonable and whether a basis exists for
7  relying on the expert rather than the [DOT]." Id. at 1153. In contrast to the present case, in
8  Massachi, there was an apparent conflict between the VE testimony and the information set
9  forth in the DOT, but the VE did not volunteer an explanation or attempt to reconcile the
10 apparent conflict, thus triggering the ALJ's duty to inquire. See Massachi, 486 F.3d at
11 1153-54. Here, there was no apparent conflict, but even if there had been, the VE testified
12 based on her professional experience. Thus, Plaintiff's reliance on Massachi is misplaced.
13 The Court finds no error.

**V. CONCLUSION**

15  Substantial evidence supports the ALJ's decision to deny Plaintiff's claim for
16 disability insurance benefits and supplemental security income. Consequently, the ALJ's
17 decision is affirmed.
18 \\\
19 \\\
20
21  Based upon the foregoing discussion,
22  **IT IS ORDERED** that the decision of the ALJ and the Commissioner of Social
23 Security be affirmed;

---

of sitting and standing . . . a [vocational source] should be consulted to clarify the implications for the occupational base." This ruling fails to indicated that a sit/stand option is in conflict with the DOT; rather, it seems to acknowledge that the DOT makes no comment on the existence, or non-existence, of a sit/stand option with regard to particular jobs. As a result, SSR 83-12 requires the ALJ to call upon the services of a VE to inquire as to the implications of a sit/stand option on the occupational base.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly. The judgment will serve as the mandate of this Court.

DATED this 15th day of January, 2016.

*Michelle H. Burns*
Michelle H. Burns
United States Magistrate Judge